IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOAN RAMIREZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO.  EP-19-CV-368-MAT |
| | § | |
| ANDREW SAUL, COMMISSIONER OF | § | |
| THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Joan Ramirez ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and her application for supplemental security income ("SSI") under Title XVI of the Act. (Pl.'s Compl., ECF No. 6). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **REVERSED** and the action **REMANDED** for further administrative proceedings.

## I.    BACKGROUND

Plaintiff was fifty-eight years old at the time the Administrative Law Judge ("ALJ") issued his decision on December 17, 2018. (R. 19, 205).[1] Her relevant prior job experience included work as a merchandise clerk and a cash accounting clerk. (R. 19, 261). On March 16, 2017, Plaintiff filed an application for a period of disability and DIB (R. 10, 202–03, 214–220, 227–28), and on

---

[1] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

March 22, 2017, she filed an application for SSI. (R. 221–26). Plaintiff alleged disability beginning on August 18, 2016 (R. 10, 291), due to hypothyroidism, osteoarthritis (spine, shoulders, both knees, both feet), osteoporosis (spine), and unknown pain (fingers). (R. 284). After her applications were denied initially (R. 90, 91) and upon reconsideration (R. 112, 113), Plaintiff requested a hearing by an ALJ. (R. 143).

On September 20, 2018, a hearing was conducted before the ALJ. (R. 25–71). On December 17, 2018, the ALJ issued a written decision denying benefits based on his conclusion at step four of the five-step sequential evaluation process that Plaintiff was capable of performing past relevant work as a cash accounting clerk and merchandise clerk. (R. 18–19). Plaintiff sought review of the ALJ's decision by the Appeals Council. *See* (R. 199–201). On October 25, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (R. 1).

On December 16, 2019, Plaintiff filed a motion in this Court to proceed with this case in forma pauperis, which the Court granted. (ECF Nos. 1 & 5). Plaintiff's Complaint was then filed on December 19, 2019. (ECF No. 6). In this appeal, Plaintiff seeks reversal of the Commissioner's decision and remand of her case, arguing: (1) "[t]he ALJ erred by failing to analyze the opinion evidence in accordance with the regulations, Agency policy, and Fifth Circuit precedent" and (2) "[t]he ALJ's credibility assessment is deficient generally as a result of the errors [in the analysis of the opinion evidence and for] failing to consider Plaintiff's stellar work history."  (Pl.'s Br., ECF No. 21, at 1).

## II.    LAW AND ANALYSIS

### A.  STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final

decision "is supported by substantial evidence on the record as a whole and whether the [Commissioner] applied the proper legal standard[s]." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)) (alteration in original). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229). It is more than a scintilla of evidence, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* (citations omitted). However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted

by the Appeals Council." *Newton*, 209 F.3d at 455.

### B. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, "disability" means, in relevant part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). This means that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* at §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Social Security Administration Regulations (the "Regulations") prescribe a "five-step sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1) & 416.920(a)(1). If at any step of the process the ALJ finds that the claimant is either disabled or not disabled, the ALJ will make his determination as to disability and will not continue with a consideration of the remaining steps. *Id.* at §§ 404.1520(a)(4) & 416.920(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If so, the ALJ will find the claimant is not disabled and will not continue to step two. *Id.*

At the second step, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* at §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). An impairment or combination of impairments is severe within the meaning of the Regulations if it "significantly limits" an individual's "physical or mental ability to do basic work activities." *Id.* at §§ 404.1520(c) & 416.920(c). If the ALJ

4

determines that the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's residual functional capacity ("RFC"), "based on all the relevant medical and other evidence" in the administrative record. *Id.* at §§ 404.1520(e) & 416.920(e). A claimant's RFC is the most she can still do despite her physical and mental limitations that affect what she can do in a work setting. *Id.* at §§ 404.1545(a)(1) & 416.945(a)(1). When assessing the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at §§ 404.1545(a)(2) & 416.945(a)(2).

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the ALJ determines that, considering the RFC, the claimant can still do her past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant

is disabled. *Id.*

C. THE ALJ'S WRITTEN DECISION

In his written decision, the ALJ analyzed Plaintiff's applications for a period of disability and DIB and SSI using the five-step sequential evaluation process set forth in the Regulations. (R. 10–19). Before beginning the evaluation process, the ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2021." (R. 13). At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2016, the alleged onset date of disability. (R. 13). Proceeding to step two, the ALJ found that Plaintiff had the following severe impairments[2]: osteoarthritis of the bilateral knees and shoulder, mild degenerative disc disease of the cervical and thoracic spine, and obesity. (R. 13). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Regulations. (R. 14).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work as defined by the Regulations[3] with the following additional limitations:

> the claimant can lift 10 pounds frequently and 20 pounds occasionally. The claimant can stand and walk 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can

---

[2] The ALJ also determined that the following impairments were not severe: plantar fasciitis of the right foot, hyperlipidemia, hypothyroidism, and chronic sinusitis. (R. 13).

[3] According to the Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

> never climb ladders, ropes, or scaffolds. The claimant can frequently
> balance, and can occasionally climb ramps and stairs, stoop, kneel,
> crouch, and crawl.

(R. 14). At step four, considering Plaintiff's RFC and her past relevant work, the ALJ determined

that Plaintiff was capable of performing her past relevant work as a cash accounting clerk and

merchandise clerk "as it is generally performed." (R. 18–19).

Accordingly, the ALJ determined that Plaintiff was not under a disability between the

alleged onset date and the date of his decision and, therefore, did not proceed to step five of the

five-step sequential evaluation process. (R. 19).

D. WHETHER THE ALJ ERRED BY FAILING TO ANALYZE THE MEDICAL OPINION EVIDENCE IN
ACCORDANCE WITH THE REGULATIONS, AGENCY POLICY, AND FIFTH CIRCUIT PRECEDENT.

Plaintiff claims that the ALJ did not properly assess the opinions of Dr. Regina Molokwu

and Dr. Yi Jia. Plaintiff asserts that Dr. Molokwu is Plaintiff's treating physician and that the ALJ

"gave no obvious consideration" to the regulatory factors when considering what weight to give

Dr. Molokwu's opinion. (Pl.'s Br., ECF No. 21, at 9). Plaintiff also argues that the ALJ did not

give good reasons for rejecting the opinion of Dr. Jia, an examining physician. *Id.* Plaintiff claims

that the ALJ also failed to consider the consistencies between the opinions of the two doctors. *Id.*

at 10. Plaintiff argues that the underlying medical evidence supports the opinions of Dr. Molokwu

and Dr. Jia and that the ALJ improperly substituted his own interpretation of the medical evidence

in rejecting those opinions. *Id.* at 12.

i. *The Opinions of Dr. Molokwu*

Plaintiff claims that the ALJ gave the opinions of her treating physician, Dr. Molokwu, "no

weight" on the basis that it was not consistent with the longitudinal evidence of record or Dr.

Molokwu's own treating notes. (Pl.'s Br., ECF No. 21, at 11). Plaintiff argues that, in doing so,

the ALJ substituted his own lay interpretation of the medical data for that of Dr. Molokwu. *Id.*

Plaintiff asserts that the objective medical evidence of record supports Dr. Molokwu's opinions by demonstrating a history of degenerative changes and osteoarthritis and that physical examinations found "painful range of motion of the shoulders, tenderness to palpation, and difficulty sitting, standing, and walking." *Id.* at 11–12 (citing R. 396–98, 404, 423, 432–33, 438–40, 442, 492).

In response, the Commissioner argues that the ALJ was not required to provide good reasons for the weight the ALJ assigned Dr. Molokwu's opinions because Dr. Molokwu is not a treating physician under the Regulations. (Comm'r's Br., ECF No. 22, at 5). Second, the Commissioner argues that even if Dr. Molokwu were properly considered a treating physician, the ALJ properly gave Dr. Molokwu's opinion no weight because it was inconsistent with the evidence as a whole, including Dr. Molokwu's own examination findings. *Id.* at 2, 5. The Commissioner asserts that the physical examinations by Dr. Molokwu do not show abnormalities "related to Plaintiff's musculoskeletal system, gait, or reaching or handling abilities." *Id.* at 2–3 (citing R. 469–70, 473–74, 478, 502, 507). The Commissioner argues that it is the ALJ's duty to weigh the evidence and doing so does not constitute "playing doctor." *Id.* at 7.

a.  Whether Dr. Molokwu Is a Treating Physician[4] Under the Regulations

The Court first takes up the matter of whether Dr. Molokwu should be considered a treating physician under the Regulations because, if so, the ALJ must assess Dr. Molokwu's opinions as set forth in the Regulations and the case law that specifically apply to treating physicians as opposed to examining physicians. Plaintiff asserts that Dr. Molokwu is her treating physician. (Pl.'s Br., ECF No. 21, at 9). The Commissioner refutes this, arguing that "Plaintiff first saw Dr.

---

[4] The parties often use the term "treating physician" when discussing the issues in relation to Dr. Molokwu, while the Regulations use the term "treating source." *See e.g.*, 20 C.F.R. § 404.1527(a)(2). As will be more thoroughly discussed *infra*, a "treating source" is an "acceptable medical source" who has or has had an ongoing medical treatment relationship with the claimant. *Id.* An "acceptable medical source" includes a licensed physician. 20 C.F.R. § 404.1502(a)(1). Therefore, a "treating physician" is a type of "treating source" under the Regulations.

Molokwu less than four months prior to the date Dr. Molokwu issued her opinion, and in that time, Plaintiff only saw Dr. Molokwu a handful of times." (Comm'r's Br., ECF No. 22, at 5). The Commissioner thus argues that Dr. Molokwu "did not have the type of treatment relationship with Plaintiff over a sufficient period to have a 'detailed, longitudinal picture' of Plaintiff's impairments." *Id.* (quoting 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Pursuant to 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), a "[t]reating source means [the claimant's] own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." An ongoing treatment relationship generally is one where "the medical evidence establishes that [the claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* at §§ 404.1527(a)(2) & 416.927(a)(2).

Considering the Commissioner's argument, at the outset, the Court will address some of the calculations in his assessment of the frequency and duration of the healthcare relationship at issue. First, as noted by the ALJ, Plaintiff "established care" with Dr. Molokwu on February 9, 2018. *See* (R. 16, 462). The date of Dr. Molokwu's "Treating Source Statement" is July 14, 2018. (R. 454). Accordingly, Dr. Molokwu issued her opinions just over five months after Plaintiff established care with her, rather than the "less than four months" as stated by the Commissioner. *See* (Comm'r's Br., ECF No. 22, at 5). Second, within those five months, Plaintiff visited Dr. Molokwu six times: February 9 (R. 462–66); February 15 (R. 467–70); March 21 (R. 471–74); May 16 (R. 475–79); June 5 (R. 480–84); and July 11 (R. 485–89). Accordingly, to the extent the number of visits to a doctor's office can be described in terms of "a handful," the Court is of the opinion that six times in five months exceeds that threshold.

These calculations aside, the Commissioner fails to apply the standard described in the Regulations to his argument that Dr. Molokwu does not qualify as Plaintiff's treating physician. With no mention of the type of treatment Dr. Molokwu was providing Plaintiff, the Commissioner contends that a "handful" of visits was not enough to demonstrate a treating relationship. (Comm'r's Br., ECF No. 22, at 5). However, the Regulations state that a treatment relationship sufficient to establish a physician as a treating physician occurs when "[the claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). Accordingly, a determination as to whether a physician is a treating physician cannot be made without reference to the type of treatment the physician provides. In this case, Dr. Molokwu stated in her Treating Source Statement that she practices family medicine and treated Plaintiff for "primary osteoarthritis, mixed hyperlipidemia, hypothyroidism, [and] chronic sinusitis." (R. 452). Furthermore, the medical record evidence of the visits to Dr. Molokwu demonstrate that Dr. Molokwu ordered tests and procedures related to various of Plaintiff's diagnoses and conducted follow up visits to discuss results. *See* (R. 462–89).

To support his argument that Dr. Molokwu did not see Plaintiff enough to establish a treating relationship, the Commissioner cites two cases, neither of which the Court finds instructive under the instant facts. The Commissioner cites *Brown v. Astrue* (Comm'r's Br., ECF No. 22, at 5), in which the Fifth Circuit agreed with the district court's conclusion that the physician's opinion in that case "should not be accorded the 'controlling weight' of a 'treating physician' testimony under the law" where the opinion was based on only five visits, once every three months, each visit lasting less than twenty minutes. *Brown v. Astrue*, 344 F. App'x 16, 21 (5th Cir. 2009). In the second case cited by the Commissioner, *Valles v. Berryhill*, the district court determined a

physician was not a treating physician where he only saw the plaintiff two times. No. EP-18-CV-00090-RFC, 2018 WL 5892375, at *4 (W.D. Tex. Nov. 9, 2018) (citing 20 C.F.R. § 404.1527(a)(2); *Brown*, 344 F. App'x at 21). However, the facts in *Brown* and *Valles* are significantly different from the ones in the instant case.

In *Brown*, the doctor at issue opined on Plaintiff's "psychiatric/psychological impairment[s]," and briefly saw the plaintiff five times over the course of seventeen months, 344 F. App'x at 20–21, and in *Valles*, the physician saw the plaintiff only two times during the relevant period. 2018 WL 5892375, at *4. Here, Dr. Molokwu opined on Plaintiff's physical impairments and saw Plaintiff six times over the course of five months before issuing her opinions. *See* (R. 451–54, 462–89). Further, in *Brown*, the ALJ specifically concluded that the doctor did not have a legitimate treating relationship with the plaintiff.[5] *Brown*, 344 F. App'x at 21. Here, the ALJ makes no such explicit finding. On the contrary, the ALJ in the instant case appears to implicitly consider Dr. Molokwu to be Plaintiff's treating physician, describing Plaintiff as "establish[ing] care" with Dr. Molokwu (R. 16), describing Dr. Molokwu's "consistent" findings (R. 17), and citing the records of several visits. *See* (R. 17). The ALJ also described the records from Dr. Molokwu as "treating notes" or "treatment records" when discussing the weight he gave Dr. Molokwu's opinions. (R. 18). Considering the factual differences of *Brown* and *Valles* when compared to the instant case, the Court is not persuaded that either case supports the Commissioner's argument.

Accordingly, the Court finds the Commissioner's post-hoc justification that Dr. Molokwu was not a treating physician to be unsupported by his legal citations and the record. At the very

---

[5] In fact, the Fifth Circuit states that the ALJ discounted the doctor's opinion for two reasons: because the doctor's assessment and visits with the Plaintiff occurred after the relevant time period and "because [the doctor] did not have a legitimate treating relationship with [the plaintiff] at that time." *Brown*, 344 F. App'x at 20-21.

least, considering that the ALJ made no explicit finding on the issue, there is a question as to whether the ALJ considered Dr. Molokwu to be a treating physician, and therefore, the Court cannot determine whether the ALJ applied the correct legal standard. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."). Any such ambiguity, however, should be resolved at the administrative level. *See Gonzalez v. Berryhill*, No. 3:17-CV-00098-RFC, 2017 WL 4563661, at *3 (W.D. Tex. Oct. 11, 2017); *Collins v. Colvin*, No. 13-50-JJB-SCR, 2015 WL 1246561, at *1, 4 (M.D. La. Mar. 17, 2015) (adopting report and recommendation); *Craaybeek v. Astrue*, No. 7:10-CV-054-BK, 2011 WL 539132, at *6 (N.D. Tex. Feb. 7, 2011). Nevertheless, if the record demonstrates that the ALJ applied the standard for assessing the opinions of treating physicians and his decision is based on substantial evidence, such distinction will not warrant remand, pursuant to the harmless error doctrine.

   b. <u>Whether the ALJ Applied the Standard for Assessing the Opinions of Treating Physicians When Considering the Opinions of Dr. Molokwu</u>

Plaintiff claims that the ALJ erred in his assessment of Dr. Molokwu's opinions because the ALJ failed to consider the required regulatory factors and failed to give good reasons for rejecting Dr. Molokwu's opinions. (Pl.'s Br., ECF No. 21, at 9, 11–12). Plaintiff also argues that the ALJ improperly substituted his own interpretation of the medical data for those of medical professionals when the ALJ stated that Dr. Molokwu's opinions are not supported by her own progress notes. *Id.* at 11. Finally, Plaintiff asserts that the ALJ was not free to reject Dr. Molokwu's opinions where there was no contradictory evidence from another examining or treating medical source. *Id.* at 12.

In response, the Commissioner argues that the ALJ articulated good reasons for rejecting Dr. Molokwu's opinions because they were unsupported by the evidence. (Comm'r's Br., ECF

No. 22, at 5). The Commissioner also asserts that the ALJ's opinion demonstrates the ALJ's consideration of the regulatory factors. *Id.* at 6. The Commissioner argues that the ALJ is not required to rely on a given medical opinion to determine a claimant's RFC because the RFC is an administrative assessment. *Id.* at 6–7. According to the Commissioner, the ALJ properly exercised his duty to weigh the evidence. *Id.* at 7.

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(a)–(b) & 416.927(a)–(b). A "treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2). When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of 20 C.F.R. §§ 404.1527 and 416.927 in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2). When disability is denied, the decision:

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, at *5. A single treating source may provide medical opinions on several issues, and "[a]lthough it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not." *Id.* at *2; s*ee also* SSR 96-5p, at *4 ("Adjudicators must remember,

13

however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one.").

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[6] *Newton*, 209 F.3d at 453 (emphasis in original); s*ee also Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."). These factors include the frequency of examination and length, nature, and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; specialization of the physician; and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the medical source is familiar with the other information in the claimant's case record. 20 C.F.R. §§ 404.1527(c) & 416.927(c).

Dr. Molokwu provided opinions on several of Plaintiff's limitations. She opined that, due to Plaintiff's impairments, treatment, and symptoms, Plaintiff was likely to be "off task" more than twenty-five percent of a typical workday; would be able to maintain attention and concentration for less than fifteen minutes before requiring a break; and would likely be absent from work three days per month. (R. 451). Dr. Molokwu opined that Plaintiff could rarely lift or carry less than ten

---

[6] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927. *Compare* 20 C.F.R. §§ 404.1527 & 416.927 (effective to July 31, 2006) *with* 20 C.F.R. §§ 404.1527 & 416.927 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. §§ 404.1527 & 416.927 (effective Mar. 27, 2017).

pounds and never more, citing imaging confirming degenerative disease of the acromioclavicular joint of the right shoulder. (R. 452). In Dr. Molokwu's opinion, Plaintiff would be able to sit for four hours and stand/walk for four hours in an eight-hour workday, due to osteoarthritis and pain in her spine, hands, feet, and head. (R. 452). Plaintiff would require the option to lie down or recline four times, for thirty minutes each time, throughout the workday. (R. 452).

Dr. Molokwu opined that Plaintiff would be limited to reaching overhead occasionally with the left arm and rarely with the right; reaching in other directions frequently with the left arm and rarely with the right; and handling rarely, fingering occasionally, feeling continuously, and pushing/pulling occasionally with both hands/arms, all due to osteoarthritis, pain in the arms, hands, head, and spine. (R. 453). Plaintiff would be limited to use of foot controls frequently with both feet, due to pain in feet from osteoarthritis. (R. 453). Plaintiff could never climb ladders and scaffolds, kneel, or crouch; rarely climb stairs and ramps and crawl; occasionally stoop and rotate head and neck; and frequently balance, due to osteoarthritis (supported by imaging), "pain and limited use of limbs, ability to get back up from [the] ground." (R. 454).

Finally, Plaintiff could never be exposed to unprotected heights, moving mechanical parts, and vibrations; could rarely be exposed to extreme heat and cold; could occasionally be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants; and could occasionally operate a vehicle. (R. 454).

The ALJ gave Dr. Molokwu's opinion no weight because he found it not consistent with the longitudinal evidence of record or Dr. Molokwu's own treating notes. (R. 18). Specifically, the ALJ stated that "Dr. Molokwu's physical examination findings only evidenced minimally abnormal clinical findings, such as right shoulder tenderness." (R. 18). The ALJ used this to contrast Dr. Molokwu's opinions on "off task behavior, absenteeism, and [Plaintiff's]

standing/walking/sitting capacities." (R. 18). However, the ALJ did not specifically state or give sufficiently specific reasons for rejecting Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations when stating how inconsistent her opinions were with her physical examination findings. *See* (R. 18). The ALJ merely stated that he gave the entirety of Dr. Molokwu's opinion "no weight because it is not consistent with the longitudinal evidence of record or her own treating notes." (R. 18). Such general language does not provide the Court with the ability to meaningfully review the reasons why the ALJ rejected Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations. *See* (R. 18) (noting Dr. Molokwu's opinion that Plaintiff can "occasionally reach overhead, finger, push/pull, frequently reach in all other directions, and continuously feel" with the left hand and can "rarely reach overhead, reach in all other directions, and handle, occasionally finger and push/pull, and continuously feel" with the right hand).

However, earlier in his written decision—after the discussion of the medical record evidence but prior to the discussion of the opinion evidence—the ALJ references Plaintiff's osteoarthritis of the shoulders related to the limitations the ALJ included in the RFC, stating "I have adequately accounted for the occasionally positive clinical findings in relation to [Plaintiff's] osteoarthritis of the shoulders, by finding that [Plaintiff] is limited to lifting 10 pounds frequently and 20 pounds occasionally." (R. 17). To the extent this could be construed as a "good reason" that would satisfy the regulatory requirement for rejecting Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations, the Court finds it insufficient. This statement lacks specificity linking the record evidence to Dr. Molokwu's opinions, and it also appears to mischaracterize the number of positive clinical findings in relation to the claimant's osteoarthritis of the shoulders.

The ALJ described "occasionally positive clinical findings in relation to the claimant's osteoarthritis of the shoulders." (R. 17). However, in his discussion of the longitudinal medical evidence, the Court finds only three instances in which the ALJ noted that the medical record reflects a normal range of motion in the shoulders. Two of these instances relate to medical treatment that occurred on November 16 and December 11, 2015, prior to Plaintiff's August 18, 2016 alleged onset date of disability. *See* (R. 16, 416, 420). The third instance where the ALJ stated that Plaintiff exhibited normal range of motion also involved medical treatment that occurred before the alleged onset date of disability—on May 2, 2016—however, further review of the medical records from that visit demonstrates that there was painful and difficult range of motion in the shoulders. (R. 433) ("full active and passive ranges of motion to all joints except to the shoulders which are obviously painful and has some difficulty achieving ranges of motion but does so with difficulty.").

Of the three physical examinations that occurred after Plaintiff's alleged onset date of disability and that specifically addressed Plaintiff's range of motion in her shoulders, all three describe limited and/or painful range of motion in one or both shoulders, although the ALJ only specifically mentioned it when discussing the first two instances.[7] *See* (R. 16–17, 439–40; 465; 488). Therefore, of the seven medical records that discussed Plaintiff's range of motion in her shoulders and that were discussed by the ALJ, only two demonstrated a normal or pain-free range of motion in Plaintiff's shoulders. Moreover, given that two of the five medical records demonstrating limited or painful range of motion were not included in the ALJ's discussion for that purpose, it is unclear to the Court if the ALJ considered that evidence when assessing the number of positive clinical findings in relation to Plaintiff's osteoarthritis of the shoulders.

---

[7] The ALJ also noted limited range of motion in the shoulders from medical records dated September 25, 2015, before the alleged onset date of disability. (R. 15) (citing R. 404).

Finally, the Court notes that the ALJ described "consistently [ ] mild or unremarkable physical examination findings overall," citing five visits with Dr. Molokwu. (R. 17). On review of the medical records of these visits, the Court has found that all but one of the visits were for reasons other than Plaintiff's osteoarthritis of the shoulders (with one being a follow up to discuss imaging results related to Plaintiff's osteoarthritis), and none of the medical records from these visits describe a physical examination of Plaintiff's shoulders. *See* (R. 467–70; 471–74; 475–79; 480–84; 504–08). Accordingly, it is unclear if the ALJ included these visits when concluding that there were "occasionally" positive clinical findings in relation to Plaintiff's osteoarthritis of the shoulders, and, if so, the reason he found such information relevant. Thus, while it appears that the word "occasionally" is a mischaracterization of the number of times that the medical record demonstrates positive clinical findings in relation to Plaintiff's osteoarthritis of the shoulders, the ambiguity just described does not allow the Court to meaningfully review on which evidence the ALJ relied in making this assessment. Therefore, even if the Court were to consider the ALJ's statement as a reason for rejecting Dr. Molokwu's opined reaching and manipulative limitations, the Court finds it is not a sufficiently good reason because it does not allow the Court to conduct a meaningful review.

Accordingly, because the ALJ's RFC assessment and rejection of Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations are neither specifically mentioned in the rejection of the entirety of Dr. Molokwu's opinion nor accompanied by sufficiently specific reasons that would allow this Court to conduct a meaningful review, the Court finds that the ALJ erred by rejecting Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations without providing good reasons as required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *See also* SSR 96-2p, at *5.

18

c.   Whether the ALJ's Error Was Harmless

Having concluded that the ALJ erred in his analysis and explanation of the weight he gave Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations, the Court must determine whether these errors were harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal quotation marks omitted).

Plaintiff claims this error was not harmless because Dr. Molokwu's opinion that Plaintiff is limited to occasional reaching, handling, and fingering would preclude Plaintiff's performance of her past jobs which both require frequent reaching, handling, and fingering. (Pl.'s Br., ECF No. 21, at 6–7) (citing The Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles). Plaintiff argues that if she is unable to perform her past relevant work then the ALJ would be required to continue to step five, at which point the burden of proof shifts to the Commissioner to demonstrate that other work exists in the national economy that Plaintiff could do despite her RFC and other vocational factors. *Id.* at 7. The Commissioner argues that Dr. Molokwu's opined manipulative limitations are "unsupported by her largely normal examination findings and notation that Plaintiff's pain was 'well-controlled' with medications." (Comm'r's Br., ECF No. 22, at 5).

On examination of the record, as detailed above, the Court is of the opinion that a more accurate and/or thorough analysis of the longitudinal record relating to Plaintiff's osteoarthritis of the shoulders may have resulted in the ALJ providing greater weight to Dr. Molokwu's opinions regarding Plaintiff's reaching and manipulative limitations. This, in turn, may have resulted in an

RFC assessment reflecting greater physical limitations. In denying Plaintiff's applications at step four, the ALJ relied on the vocational expert's testimony that Plaintiff could perform her past relevant work as a cash accounting clerk and merchandise clerk given the ALJ's assessed RFC. (R. 19). However, Plaintiff cites The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") as support that her past relevant work requires frequent reaching, handling, and fingering. (Pl.'s Br., ECF No. 21, at 7). Indeed, the Dictionary of Occupational Titles, on which the vocational expert and the ALJ relied, provides that the position of Cash Accounting Clerk requires frequent reaching, handling, and fingering, Dictionary of Occupational Titles, DICOT 211.362-010 (G.P.O.), 1991 WL 671835, as does the position of Merchandise Clerk. Dictionary of Occupational Titles, DICOT 209.587-034 (G.P.O.), 1991 WL 671802. Accordingly, an RFC with limitations less than frequent reaching, handling, and fingering, as Dr. Molokwu opined, would likely require the ALJ to find that Plaintiff was not capable of performing her past relevant work. Such a finding would require the ALJ to proceed to step five at which point the ALJ would be required to determine whether Plaintiff could adjust to other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). Accordingly, the Court finds that the ALJ's error in assessing and assigning weight to Dr. Molokwu's opinions are not harmless, and thus necessitates remand for further administrative proceedings.

> ii.   *The Opinions of Dr. Jia*

Because the Court finds cause to vacate the Commissioner's decision and remand based on a finding of error in the ALJ's assessment of Dr. Molokwu's opinions on Plaintiff's reaching and manipulative limitations, the Court declines to assess whether the ALJ erred by not explaining the reasons for rejecting the opinions of Dr. Jia on the same capabilities. The Regulations for

evaluating opinion evidence, applicable to the instant case, only state that good reasons will be provided for the weight given to a "treating source's medical opinion," while remaining silent on any requirement of giving good reasons for the weight assigned to a consultative examiner's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Plaintiff does not argue that Dr. Jia is a treating physician, nor does the record support such a conclusion. *See* (R. 16, 434–41).

However, considering the common subject of the opinions at issue and the fact that the Court has determined, *supra*, that the ALJ failed to give good reasons for rejecting similar opinions of Dr. Molokwu, the Court finds the matter moot as it relates to the opinions of Dr. Jia. Reconsideration and explanation of the weight given to Dr. Molokwu's opinions will necessarily require reconsideration of Dr. Jia's opinions. Moreover, the explanation of the weight given to Dr. Molokwu's opinion after a consideration of the required regulatory factors would likely also suffice to explain the reason for including or excluding the same or similar limitations opined by Dr. Jia.

E. WHETHER THE ALJ'S CREDIBILITY ASSESSMENT IS DEFICIENT

Reconsideration and further explanation of Dr. Molokwu's and Dr. Jia's opinions relating to Plaintiff's physical limitations due to her osteoarthritis of the shoulders will likely also render moot Plaintiff's argument that the ALJ did not properly assess Plaintiff's credibility, as Plaintiff appears to concede. *See* (Pl.'s Br., ECF No. 21, at 15) (arguing that "an ALJ's obligation to properly consider the opinion evidence and to correctly and accurately describe all the limitations demonstrated by the record in the RFC, etc., are *inextricably intertwined* with the credibility finding."). When assessing the opinions of a treating physician, the ALJ is required to consider the consistency of the opinions with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4). Accordingly, the Court also declines to address that alleged error at this time.

However, this opinion does not prohibit the Commissioner from revisiting any matter it considers appropriate during the proceedings on remand, including consideration of any of the matters raised by the parties but not decided on the merits in this opinion. Accordingly,

### III.       CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Commissioner will be **REVERSED** and the action **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings.

**SIGNED** and **ENTERED** this 15th day of March, 2021.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE